**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**JILLIAN A.,**

                              **Plaintiff,**                              **6:20-CV-6512Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

<u>**DECISION AND ORDER**</u>

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #11.

**BACKGROUND**

Plaintiff applied for supplemental security income ("SSI"), with the Social

Security Administration ("SSA"), on September 8, 2017, alleging disability beginning

August 2, 2017, at the age of 23, due to post-traumatic stress disorder ("PTSD"),

anxiety, depression, kleptomania, borderline personality disorder, insomnia, dissociative

episodes, panic attacks and eating disorder. Dkt. #9, p.86.

On March 20, 2019, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Richard Riedl, at an administrative hearing before Administrative Law Judge ("ALJ"), Bonnie Hannan. Dkt. #9, pp.36-83. Plaintiff testified that she lives with her partner and a roommate with whom she gets along pretty well. Dkt. #9, p.42. Plaintiff graduated from Roberts Wesleyan College with a B.S. in General Studies in December of 2018. Dkt. #9, p.46. It took her six years to graduate because she was so anxious. Dkt. #9, p.58.

Plaintiff had worked as a cashier and was promoted to supervisor at a local food cooperative, but was fired for stealing money while dissociating. Dkt. #9, pp.48-49. She testified that she experiences symptoms of dissociation at least once a week, more often when she is working. Dkt. #9, p.50. She had recently been hired as a Barista at Starbucks and had spent one day on the floor and begun online in-store training. Dkt. #9, pp.43-44. She expected to work 20-25 hours per week over the course of four days. Dkt. #9, p.47. She testified that her training was overwhelming and that she was having difficulty remembering how to make all of the drinks but she needed the job because she and her partner did not have enough money to support themselves. Dkt. #9, pp.44, 49 & 55. She felt it was just a matter of time until she got fired. Dkt. #9, p.55. She dissociated before her second day of training and was having panic attacks just thinking about having to go in again. Dkt. #9, p.62. During a dissociative episode, she testified that she understands that people are talking to her, but she can't process or respond. Dkt. #9, p.64. After a dissociative episode, plaintiff feels exhausted and does not want to talk to anybody or be around people. Dkt. #9, p.63. Although her

eating disorder was not as bad anymore, she testified that she was so overwhelmed and stressed out the day before the hearing that she ended up throwing up in the bathroom at Starbucks. Dkt. #9, p.67.

Plaintiff had been in both individual and group therapy five days a week, including cognitive and dialectical behavioral therapy, through PROS[1] but reduced her therapy to three days a week since she began her job. Dkt. #9, p.51. She testified that she is not very good at caring for her personal needs, explaining that she showers every couple weeks when her partner reminds her to do so and doesn't always change her clothes until her partner picks clothes out for her. Dkt. #9, p.53. She also doesn't brush her teeth. Dkt. #9, p. 70. She believed this was the result of depression, which made it difficult for her to get out of bed. Dkt. #9, pp.70-71. She had missed PROS about once a week. Dkt. #9, p.71.

When asked to assume an individual with plaintiff's age, education and past work experience who was limited to simple, routine and repetitive tasks, simple work-related decision, few changes in a routine work setting, occasional interaction with supervisors and coworkers with no tandem tasks or team activities and no contact with the public, the VE testified that plaintiff could not perform her past work because of the

---

[1] The Personalized Recovery Oriented Services ("PROS"), program is a comprehensive model that integrates rehabilitation, treatment and support services for individuals with serious mental illnesses, with a goal of promoting independence and improving quality of life through, *inter alia*, social and basic life skills training, problem solving and coping skills, housing assistance, vocational training, clinical counseling and health assessment and symptom monitoring and medication management. www.omh.ny.gov

limitations in social interaction, but could work as an industrial cleaner, stores laborer or packager, each of which were unskilled, medium exertion positions. Dkt. #9, pp.76-78. The VE opined that a workplace would tolerate no more than one day absent per month or ten percent of the workday off task. Dkt. #9, p.78.

The ALJ rendered a decision that plaintiff was not disabled on June 28, 2019. Dkt. #9, pp.18-31. The Appeals Council denied review on June 10, 2020. Dkt. #9, p.4. Plaintiff commenced this action seeking review of the Commissioner's final decision on July 16, 2020. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful

activity since the alleged onset date of August 2, 2017; (2) plaintiff's generalized anxiety disorder, depression, borderline personality disorder, PTSD, unspecified dissociative disorder, unspecified eating disorder and history of bulimia nervosa constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform a full range of work at all exertional levels with non-exertional limitations for simple, routine and repetitive tasks, simple work-related decisions and few changes in a routine work setting, occasional interaction with supervisors and coworkers, no tandem tasks or team activities and no interaction with the public; and (5) plaintiff was not capable of performing her past work, but was capable of working as an industrial cleaner, stores laborer or packager, each of which were unskilled, medium exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #9, pp.20-30.

Plaintiff argues that the ALJ's differentiation between her capacity to interact with supervisors and co-workers and her capacity to interact with the public is not supported by substantial evidence in the record. Dkt. #10-1, p.19-22. Plaintiff also argues that the ALJ failed to properly evaluate the opinion of LMHC Coffin-Williams regarding plaintiff's capacity to remain on task . Dkt. #10-1, pp.22-26. Finally, plaintiff argues that the ALJ failed to properly evaluate plaintiff's subjective complaints, mischaracterized the record and hyperfocused on plaintiff's activities of daily living. Dkt. #10-1, pp.26-30. Specifically, plaintiff argues that it was improper to rely upon the fact that she had completed three days of work training to contradict LMHC Coffin-Williams opinion regarding plaintiff's capacity to work. Dkt. #10-1, p.29.

The Commissioner responds that the ALJ's RFC is supported by substantial evidence. Dkt. #12-1, pp.11-14. Specifically, the Commissioner argues that the ALJ adequately considered the opinion of LMHC Coffin-Williams and explained the basis for the weight afforded that opinion. Dkt. #12-1, pp.14-18. The Commissioner further argues that the ALJ properly weighed plaintiff's activities of daily living, attempt at employment and relationships with others in determining plaintiff's RFC. Dkt. #12-1, pp.18-21. Finally, the Commissioner argues that there is sufficient evidentiary basis for the ALJ's distinction between plaintiff's capacity to interact with supervisors and co-workers and her capacity to interact with the public and that the ALJ adequately explained the basis for that distinction. Dkt. #12-1, pp.21-23.

Plaintiff underwent a psychiatric evaluation by Adam Brownfield, Ph.D. on October 3, 2017. Dkt. #9, pp. 323-326. Plaintiff reported depressive symptoms, difficulty falling asleep, hyper vigilence, excessive worry, purging food, short-term memory issues and difficulty concentrating. Dkt. #9, p.323. She also reported dissociative episodes occurring twice per week, triggered by stress. Dkt. #9, p.324. Plaintiff reported being able to dress, bathe and groom herself; prepare food; clean; do laundry; shop; manage money; and take public transportation. Dkt. #9, p.325. She was observed to be well groomed. Dkt. #9, p.324. Dr. Brownfield diagnosed plaintiff with unspecified dissociative disorder, kleptomania, PTSD, unspecified eating disorder and cannabis use. Dkt. #9, p.323. Dr. Brownfield opined that there was no evidence of limitation in understanding, remembering, and applying simple and complex directions and instructions; interacting adequately with supervisors, co-workers and the public;

maintaining personal hygiene and appropriate attire; sustaining concentration and performing tasks at a consistent pace; or sustaining an ordinary routine and regular attendance at work. Dkt. #9, p.325. However, he opined that plaintiff was markedly limited in regulating emotions, controlling behavior and maintaining well-being and using reason and judgment to make work-related decisions. Dkt. #9, p.325.

On October 12, 2017, state agency psychologist E. Kamin, Ph.D., reviewed plaintiff's medical records and opined that plaintiff was capable of unskilled work in a low contact area. Dkt. #9, p.93.

Licensed Mental Health Counselor ("LMHC"), Demire Coffin-Williams completed a Mental Treating Medical Source Statement dated February 13, 2019, indicating that plaintiff had a positive response to treatment and had reported remission of dissociative symptoms, although anxiety and depression remained problematic. Dkt. #9, p.690. She explained that symptoms associated with high levels of anxiety and panic prevent plaintiff from interpreting feedback properly, causing impaired decision making. Dkt. #9, p.693. She also explained that interacting with the general public could be triggering for plaintiff. Dkt. #9, p.693. LMHC Coffin-Williams opined that plaintiff would not be able to maintain attention for two hour segments in an eight-hour day; would be unable to remember simple work-like procedures; understand and remember very short and simple instructions; complete a normal workday and workweek without interruptions from psychologically based symptoms; ask simple questions or request assistance; and accept instructions and respond appropriately to criticism from

supervisors for more than 20% of an 8-hour work day; and would be unable to carry out

very short and simple instructions; make simple work-related decisions; and perform at

a consistent pace without an unreasonable number and length of rest periods between

11% and 20% of an 8-hour workday. Dkt. #9, p.692. She also opined that plaintiff would

be off-task approximately 30% of a normal workday and workweek and absent about

four days per month. Dkt. #9, pp.693-694. LMHC Coffin-Williams further opined that

plaintiff had a marked limitation for understanding, remembering or applying

information; a moderate limitation for interacting with others; a marked limitation for

concentration, persistence and maintaining pace, and a moderate limitation in her

ability to adapt and manage herself. Dkt. #9, p.695.

The ALJ's assessment of plaintiff's RFC is supported by substantial

evidence in accordance with the amended regulations regarding the evaluation of

medical evidence as set forth in the *Revisions to Rules Regarding the Evaluation of

Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at

5867-68 (Jan. 18, 2017). Pursuant to the revisions, the Commissioner is no longer

required to afford any specific evidentiary weight to medical opinions, but is obligated to

consider all medical opinions and evaluate their persuasiveness based on the following

five factors: supportability; consistency; relationship with the claimant; specialization;

and other factors, with particular importance placed upon consistency and

supportability. *Alisa O. v. Comm'r of Soc. Sec'y*, 20-CV-564, 2021 WL 3861425, at *4

(W.D.N.Y. Aug. 30, 2021), *citing Revisions to Rules.* Thus, the ALJ is required to

explain how he or she considered the medical opinions and how persuasive he or she

finds the medical opinions. *Victor B. v. Comm'r of Soc. Sec'y*, 2021 WL 3667200, at *2 (W.D.N.Y. Aug. 18, 2021), *citing Revisions to Rules.* With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Raymond v. Comm'r of Soc. Sec'y*, 19-CV-1313, 2021 WL 706645, at *4 (N.D.N.Y. Feb. 22, 2021), *citing Revisions to Rules.* Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* It is noted that the amended regulations eliminate the perceived hierarchy of medical sources; deference to specific medical opinions; and assignment of weight, including controlling weight, to medical opinions. *Victor B.*, 2021 WL 3667200, at *2, *citing Revisions to Rules*.

As related to the opinion of LMHC Coffin-Williams, the ALJ appropriately explained his determination that the opinion was generally unsupported with reference to specific inconsistencies between his opinion and his progress notes, as well as inconsistencies from other providers and plaintiff's activities of daily living. *Cf. Morrison v. Comm'r of Soc. Sec.*, 18-CV-492, 2019 WL 4200123, at *4 (W.D.N.Y. Sept. 5, 2019) (conclusory statements that a medical opinion was inconsistent with the record as a whole does not satisfy an ALJ's obligation to explain his assessment of that opinion). While the ALJ also referenced plaintiff's activities of daily living as evidence of inconsistency for LMHC Coffin-Williams opinion and more generally in support of his determination of plaintiff's RFC, the Court does not find that his consideration of such

activities mischaracterized plaintiff's abilities. For example, plaintiff's ability to complete

several college classes – in person and online – and complete online training modules

for baristas, among other activities, obviously undermines opinion evidence that plaintiff

has a marked limitation for understanding, remembering or applying information and

generally supports a determination that plaintiff was capable of unskilled work. *See*

*Robin Lynn G.W. v. Comm'r of Soc. Sec'y*, 19-CV-839, 2021 WL 1139845, at *4

(W.D.N.Y. Mar. 25, 2021) (considering plaintiff's ability to attend college classes as

support for determination that plaintiff was capable of performing simple, routine work).

       With respect to the ALJ's determination that plaintiff could have

occasional interaction with supervisors and coworkers with no tandem tasks or team

activities, but no interaction with the public, the Court finds this assessment of plaintiff's

RFC appropriately balanced LMHC Coffin-Williams' concern that interacting with the

general public could be triggering for plaintiff with plaintiff's demonstrated capacity, as

evidence by the medical record and her own reports, to maintain relationships and

interact appropriately with others. As the ALJ noted, plaintiff lived with a roommate and

was able to spend time with friends. Contrary to plaintiff's argument, the evidence of

record indicates more interaction with others than watching television or exchanging

memes. *See, e.g.*, Dkt. #9, pp. 366, 375, 376, 445, 708. She was able to attend in

person college classes and group therapy through PROS, as well as attend yoga and

zumba classes. Dkt. #9, p.438. Dr. Brownfield opined that there was no evidence that

plaintiff was limited in interacting adequately with supervisors, co-workers and the

public; LMHC Coffin-Williams opined that plaintiff would be moderately limited in her

ability to interact with others; and state agency psychologist indicated that plaintiff could

work in a low contact environment. An ALJ is entitled to weigh all of the evidence

available to make an RFC determination that is consistent with the record as a whole;

his RFC determination is not required to correspond perfectly with any of the opinions of

medical sources. *Trepanier v. Comm'r of Soc. Sec'y*, 752 Fed. App'x 75, 79 (2d Cir.

2018). Moreover, the fact that the ALJ adopted an RFC assessment that is arguably

more restrictive than the opinion evidence would require is generally not a basis for

remand. *Salisbury v. Comm'r of Soc. Sec'y,* 2020 WL 6384233, at *10 (W.D.N.Y. Oct.

30, 2020) (internal quotation omitted); *Edwards v. Comm'r  of Soc. Sec*., 6:18-CV-6221,

2019 WL 1673486, at *8 (W.D.N.Y. April 17, 2019).


## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings

(Dkt. #10), is denied and the Commissioner's motion for judgment on the pleadings

(Dkt. #12), is granted.


The Clerk of the Court is directed to close this case.


**SO ORDERED.**


**DATED:**     **Buffalo, New York**
          **September 30, 2021**

                                   **s/ H. Kenneth Schroeder, Jr.**
                                   **H. KENNETH SCHROEDER, JR.**
                                   **United States Magistrate Judge**